IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN SCHWEITZER and WILLIAM SCOTT MERO,<br><br>**Plaintiffs,**<br><br>v.<br><br>JAMES E. NEVELS and THE SWARTHMORE GROUP, INC.,<br><br>**Defendants.** | CIVIL ACTION NO.  23-1556 |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                                    **March 5, 2026**

Plaintiffs Steven Schweitzer and William Scott Mero brought this action against James E.

Nevels and The Swarthmore Group, Inc. ("TSG") for breach of contract, fraudulent

misrepresentation, fraudulent inducement, and state labor law violations.[1] After Plaintiffs sued,

TSG filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code, which stayed

the proceedings as to TSG.[2] There are two pending motions before the Court: Defendant

Nevels's Motion to Dismiss or, in the Alternative, to Stay; and Plaintiffs' Motion to File Second

Amended Complaint. For the reasons stated herein, the Court will grant Nevels's Motion to Stay

pending resolution of TSG's bankruptcy proceedings. The Court will dismiss without prejudice

Nevels's Motion to Dismiss and Plaintiffs' Motion to File Second Amended Complaint.

---

[1] *See* Compl. [Doc. No. 1-2]; First Am. Compl. ("FAC") [Doc. No. 32].

[2] TSG Suggestion of Bankruptcy [Doc. No. 17].

## I.    BACKGROUND

### A.    Factual Background

The following factual summary is based on the allegations in Plaintiffs' First Amended Complaint ("FAC"). Plaintiffs are New York residents who each have over twenty-five years of financial and investment experience.[3] In 2020, Plaintiffs were unsatisfied with their employment positions and sought to pursue a business opportunity where they could work together for a mutual client or investment company.[4]

Defendant TSG is a now-inactive investment advisory firm that offered financial services including wealth management, portfolio management, and investment consulting.[5] TSG was incorporated in Delaware with a principal place of business in Pennsylvania.[6] It serviced individuals, small and large businesses, and institutional clients.[7] Defendant Nevels is a Pennsylvania resident who founded TSG in 1991.[8] He was TSG's Chairman, Chief Executive Officer, and largest shareholder.[9] Moreover, Nevels was TSG's sole policy-making officer and interested owner.[10] He made governing decisions with respect to TSG's hiring practices, employment contracts, and expenditures of corporate funds.[11] Accordingly, Plaintiffs allege that

---

[3] FAC ¶¶ 4-5, 12-14 [Doc. No. 32].

[4] *Id.* ¶¶ 16-17.

[5] *Id.* ¶ 8.

[6] *Id.* ¶ 7.

[7] *Id.* ¶ 8.

[8] *Id.* ¶¶ 6, 8-9.

[9] *Id.* ¶ 9.

[10] *Id.* ¶ 10.

[11] *Id.*

Nevels was the alter ego of TSG and thereby personally liable for TSG's allegedly wrongful conduct.[12]

On or about January 15, 2021, Plaintiffs entered into employment agreements with TSG and Nevels.[13] Plaintiffs' respective agreements provided for them to serve as Senior Fixed Income Portfolio Managers for two consecutive years.[14] The agreements referred to Plaintiffs as "Executive[s]" and to Nevels as the "Principal."[15] Under the agreements, Plaintiffs were to receive annual base salaries of $250,000 each, with additional compensation to be awarded in annual bonuses and issuances of TSG common stock.[16] Plaintiffs were also entitled to reimbursement for reasonable business expenses and health and retirement benefits.[17] If TSG terminated Plaintiffs' employment without cause, the agreements specified that Plaintiffs would receive any salary, reimbursements, or benefits that had accrued but were unpaid, as well as four months' severance compensation and health and disability benefits during the four-month severance period.[18]

The agreements include a choice-of-law provision, dictating that the agreements "shall be interpreted and enforced in accordance with the laws of the [Commonwealth] of Pennsylvania, without regard to its conflict-of-law principles."[19] The agreements also contain an integration clause stating that "[t]his agreement constitutes the entire understanding and agreement of the

---

[12] *See id.* ¶¶ 180, 198, 216, 299.

[13] *Id.* ¶¶ 38, 46

[14] *Id.* ¶¶ 39, 46-47.

[15] *Id.* Ex. A at 1, Ex. B at 1.

[16] *Id.* Ex. A ¶ 4(a)-(c), Ex. B ¶ 4(a)-(c).

[17] *Id.* Ex. A ¶ 4(d)-(e), Ex. B ¶ 4(d)-(e).

[18] *Id.* Ex. A ¶ 5(c), Ex. B ¶ 5(c).

[19] *Id.* Ex. A ¶ 13(e), Ex. B ¶ 13(e).

Parties concerning the subject matter hereof, and it supersedes all prior negotiations, discussions, correspondence, communications, understandings and agreements regarding such subject matter."[20] The integration clause adds that the parties did not, and could not, rely on "any oral or written representation of any kind that is not set forth in writing in this Agreement."[21]

Around the time that the agreements were finalized, Nevels indicated to Plaintiffs that he would provide resources for TSG's ongoing development, including funds needed to hire staff, upgrade TSG's technology, and enhance TSG's marketing.[22] He also represented to Plaintiffs that they would have managerial input in TSG's growth and development.[23] According to the FAC, upon commencement of their employment, Plaintiffs learned that TSG was encumbered by significant organizational deficiencies in the areas of account management, information technology, and internal compliance.[24] Plaintiffs also found that many employees were unable to adequately fulfill their job responsibilities.[25] When Plaintiffs expressed these concerns, Nevels stated that he would take corrective action by delivering the funds and resources necessary for Plaintiffs to succeed.[26] Nevels also reaffirmed that Plaintiffs would have managerial input in TSG and become his eventual successors.[27]

Nevels did not take corrective action. Citing personal and family health reasons, he ceased TSG's operations and terminated Plaintiffs' employment on June 30, 2022.[28] Following

---

[20] *Id.* Ex. A ¶ 13(i), Ex. B ¶ 13(i).

[21] *Id.*

[22] *Id.* ¶¶ 64, 66.

[23] *Id.* ¶ 66.

[24] *Id.* ¶¶ 86, 91.

[25] *Id.* ¶ 91.

[26] *Id.* ¶¶ 86, 88, 270-71.

[27] *Id.* ¶¶ 272.

[28] *Id.* ¶¶ 168, 201-03.

their termination, Plaintiffs did not receive severance payments.[29] Nor did they receive

healthcare benefits during the severance period or any bonus, reimbursement of business

expenses, or equity in TSG in the form of common stock.[30]

### B.    Procedural History

On July 1, 2022, Plaintiffs filed a Complaint in New York state court.[31] Defendants

removed the case to federal court in the Southern District of New York and later filed the FAC

that is currently operative.[32] In the FAC, Plaintiffs assert claims for Breach of Contract (Count

1), Fraudulent Misrepresentation (Count 2), Fraudulent Inducement (Count 3), violation of the

Pennsylvania Wage Payment and Collection Law (Count 4), and violation of New York Labor

Law (Count 5).[33] After this action was removed to federal court, TSG filed for bankruptcy in the

Eastern District of Pennsylvania under Chapter 7 of the United States Bankruptcy Code, thereby

staying the proceedings as to TSG.[34] Nevels moved to dismiss or, in the alternative, to transfer

the case or stay the case pending resolution of TSG's bankruptcy proceedings.[35] United States

Magistrate Judge Katharine H. Parker transferred the case to the Eastern District of

Pennsylvania.[36]

At this Court's direction, the parties submitted a joint status report on May 20, 2025,

addressing the status of TSG's bankruptcy proceedings.[37] The report states that the proceedings

---

[29] *Id.* ¶ 218.

[30] *Id.* ¶¶ 218-25.

[31] *See* Compl. [Doc. No. 1-2].

[32] Notice of Removal [Doc. No. 1]; FAC [Doc. No. 32].

[33] FAC ¶¶ 195-333 [Doc. No. 32].

[34] *See* TSG Suggestion of Bankruptcy [Doc. No. 17]; 11 U.S.C. § 362(a).

[35] Mot. to Dismiss, Stay, or Transfer [Doc. No. 33].

[36] 4/17/23 Opinion & Order [Doc. No. 60].

[37] 5/6/25 Order [Doc. No. 68]; 5/20/25 Joint Status Report [Doc. No. 69].

remain ongoing, in part because the bankruptcy trustee filed an adversary proceeding against Nevels and four other individuals, asserting various claims relating to "the avoidance of alleged preferential transfers, avoidance of alleged actual and constructively fraudulent transfers, disallowance of claims under 11 U.S.C. § 502(d) and (j), and alleging breaches of fiduciary duty and other alleged conduct."[38] As provided in the joint report, the parties agree that Plaintiffs "appear collectively to be the largest creditors of the estate" and that the outcome of the bankruptcy proceedings could affect the status of claims asserted in this matter.[39]

Since the joint report was submitted, Nevels re-filed a Motion to Dismiss or, in the Alternative, to Stay proceedings pending resolution of TSG's bankruptcy matter.[40] Plaintiffs then filed a Motion to File Second Amended Complaint.[41] Both motions are briefed and ripe for review.

## II.   DISCUSSION

In the interest of judicial economy, the Court will address whether a stay is appropriate before considering the validity of the FAC or Plaintiff's motion to amend.[42] Nevels urges the Court to enter a discretionary stay since Plaintiffs' claims against him will be substantially affected by the bankruptcy proceedings against TSG.[43]

---

[38] 5/20/25 Joint Status Report at 1-2 [Doc. No. 69].

[39] *Id.* at 2.

[40] Mot. to Dismiss or Stay [Doc. No. 71].

[41] Mot. to Amend [Doc. No. 76].

[42] *See ComUnity Collectors LLC v. Mortg. Elec. Registration Servs. Inc.*, Nos. C-11-4777, C-12-0771, 2012 WL 3249509, at *3 (N.D. Cal. Aug. 7, 2012) (analyzing whether a stay applied before reaching other issues); *Resol. Mgmt. Consultants, Inc. v. Hickey*, No. 10-6243, 11-914, 11-946, 11-954, 11-956, 2011 WL 2609854, at *1 (D.N.J. June 29, 2011) (indicating that a court should consider judicial economy when multiple motions are pending).

[43] Mot. to Dismiss or Stay at 14-15 [Doc. No. 71].

As a matter of discretion, courts may stay proceedings "to abide the outcome of [other proceedings] which may substantially affect [the proceedings] or be dispositive of the issues."[44] Discretionary stays are "independent of the automatic stay provision of § 362(a) of the Bankruptcy Code."[45] A determination of whether a discretionary stay is appropriate "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."[46] The moving party "bears the burden of proof . . . [to] 'make out a clear case of hardship or inequity in being required to go forward.' "[47] Specifically, in deciding whether to grant a discretionary stay, "the Court must consider: '(1) whether a stay will simplify the issues and promote judicial economy; (2) the balance of the harm to the parties; and (3) the length of the requested stay.' "[48]

First, judicial economy considerations counsel strongly in favor of a discretionary stay. The resolution of Plaintiffs' claims against TSG in the bankruptcy court would not just narrow the scope of this case but would in fact decide its dispositive questions outright.[49] Indeed, Plaintiffs' claims against TSG, alleging breach of contract, fraud, and state law violations, are identical to what Plaintiffs allege against Nevels in this action. The validity of the claims against Nevels therefore is related to Plaintiffs' bankruptcy action against TSG, meaning a temporary

---

[44] *Bechtel Corp. v. Local 215, Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976); *see also Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 737-38 (3d Cir. 1983) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)).

[45] *In re Adelphia Commc'ns Secs. Litig.*, No. 02-1781, 2003 WL 22358819, at *6 (E.D. Pa. May 13, 2003).

[46] *Bechtel*, 544 F.2d at 1215 (quoting *Landis*, 299 U.S. at 254-55).

[47] *Hicks v. Swanhart*, No. 12-1633, 2012 WL 6152901, at *2 (D.N.J. Dec. 10, 2012) (quoting *Landis*, 299 U.S. at 255).

[48] *Giovanni v. U.S. Dep't of the Navy*, Nos. 16-4873, 17-765, 2019 WL 6839941, at *1 (E.D. Pa. Dec. 16, 2019) (quoting *Smithkline Beecham Corp. v. Apotex Corp.*, No. 99-4304, 2004 WL 1615307, at *7 (E.D. Pa. July 16, 2004)); *see Cheyney*, 703 F.2d at 737-38 (identifying these factors without numbering them).

[49] *See Hicks*, 2012 WL 6152901, at *3 (granting a stay that had potential to render issues moot and enable parties to streamline arguments).

stay will promote efficient, single-track litigation.[50] Conversely, should the Court allow this matter to proceed, the parties will needlessly exhaust resources re-litigating issues and repeating discovery in a scenario that has been before the bankruptcy court for nearly four years.[51] These proceedings would be duplicative and, of particular concern, would risk spawning inconsistent rulings and judgments. Though the Court need not answer whether the automatic stay in 11 U.S.C. § 362(a) covers these proceedings,[52] the Court finds that the hazard of inconsistent rulings weighs particularly heavily in the bankruptcy context, as the bankruptcy code was designed to avoid "a multijurisdictional rush to judgment"[53] and a "conflict in judgments."[54]

Second, the harm posed to Plaintiffs by a temporary discretionary stay is limited. Plaintiffs argue that a discretionary stay is unwarranted because, as unsecured creditors, they

---

[50] *Compare Wang v. Liu*, 584 B.R. 427, 435-36 (D. Mass. Mar. 13, 2018) (denying a stay as to individual nonbankrupt defendants whose decisive issues were "not dependent on resolution of claims against [the debtor]") *with Villafañe-Colon v. B Open Enters.*, 932 F. Supp. 2d 274, 281 (D.P.R. 2013) (granting a stay over a district court action on claims against nonbankrupt co-defendants that were "directly relate[d]" to those against the bankrupt defendant).

[51] *See Morgenstern v. Fox Television Stations of Phila.*, No. 08-0562, 2010 WL 678113, at *3 (E.D. Pa. Feb. 23, 2010) (noting that the costs associated with potentially duplicative discovery supported a stay pending related bankruptcy proceedings); *United States v. Shapiro*, No. 21-cv-2475 (GRB) (JMW), 2021 WL 5304056, at *2 (E.D.N.Y. Nov. 15, 2021) (entering a discretionary stay partly because the case's outcome was contingent upon a related bankruptcy case and "discovery in that action will undoubtedly overlap with the discovery in this action").

[52] One provision in the automatic stay statute, 11 U.S.C. § 362(a)(3), provides that when a bankruptcy petition is filed, an automatic stay extends to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Following a broad construction of § 362(a)(3), circuit courts have often interpreted the automatic stay to apply to alter ego or "veil piercing" claims that are "property of the estate" and brought by creditors against nonbankrupt co-defendants. *See In re Tronox Inc.*, 855 F.3d 84, 99 (2d Cir. 2017) (citing *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989) (collecting cases including in the Fourth, Fifth, Seventh, and Tenth Circuits)). To be property of the estate, such claims must be "general to the estate," not "personal to a specific creditor." *See In re Wilton Armetale, Inc.*, 968 F.3d 273, 282-83 (3d Cir. 2020) (internal quotation marks omitted). A claim's generality is established by virtue of its foundation on "facts generally available to any creditor," as opposed to an injury that "can be directly traced to the wrongful conduct committed by the [nonbankrupt] defendant." *In re Whittaker Clark & Daniels Inc.*, 152 F.4th 432, 448 (3d Cir. 2025) (internal quotation marks omitted). Because the Court concludes herein that a discretionary stay is warranted, it need not decide if this test is met for alter ego claims against the controlling CEO of a bankrupt entity.

[53] *In re Reliance Acceptance Grp. Inc.*, 235 B.R. 548, 559 (D. Del. June 2, 1999) (quoting *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1274 (5th Cir. 1983)).

[54] *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1154 (5th Cir. 1987).

8

may lose out on full recovery in the bankruptcy court if their claims succeed.[55] While bankruptcy proceedings may entail only a partial recovery, Plaintiffs' status as the apparent "largest creditors of the estate" strengthens their ability to obtain some relief.[56] By the same token, the parties acknowledge that the bankruptcy trustee has initiated adversary proceedings implicating insurance coverage and potential fiduciary liability, all of which may enlarge the estate's assets.[57] Finally, an unencumbered resolution of the bankruptcy proceedings will aid the Court in deciding any remaining issues with clarity and expediency. That clarity promises the parties greater finality. It also mitigates the costs on both parties of pursuing duplicative litigation, coordinating offsets in recovery between two fora, and resolving potentially conflicting judgments.[58]

Third, the advanced posture of TSG's bankruptcy matter, which has been pending for almost four years, underscores the minimal nature of any prejudice to Plaintiffs resulting from a stay.[59] Even so, the Court will order the parties to complete recurring reports to monitor whether a prolonged stay would eventually be unduly prejudicial to Plaintiffs.

Weighing the factors, the Court finds that the profound judicial economy interest in a temporary stay surmounts any corresponding prejudice to Plaintiffs. This determination, which is supported by the pleadings and the joint status report, reflects the accepted principle that a

---

[55] Pls.' Resp. at 25 [Doc. No. 73].

[56] 5/20/25 Joint Status Report at 2 [Doc. No. 69].

[57] *Id.*

[58] *See Morgenstern*, 2010 WL 678113, at *3; *Bloom v. Gen. Motors LLC*, No. 14-1903, 2015 WL 140037, at *2 (M.D. Pa. Jan. 12, 2015).

[59] *See Blue Moon Mktg., LLC v. Matthews*, No. 6:14-cv-2036-Orl-41TBS, 2016 WL 7228753, at *1 (M.D. Fla. Oct. 27, 2016) (determining that a three-year-old bankruptcy proceeding was more likely to conclude shortly, thereby favoring a temporary stay of the related district court matter).

court's broad discretion to stay proceedings extends to actions that are substantially similar to ongoing bankruptcy matters.[60]

Plaintiffs' arguments to the contrary are unavailing. Although they allude to an absence of irreparable harm to Nevels and their likelihood of prevailing on the merits, those are the criteria when a party seeks a stay pending appeal,[61] not upon a court's consideration of a temporary discretionary stay.[62] Similarly, the Court disagrees that Plaintiffs' case citations are controlling.[63] Those decisions held that the automatic bankruptcy stay in 11 U.S.C. § 362(a) did not extend to certain nonbankrupt co-defendants, whereas the stay under consideration here derives from the district court's discretionary authority.[64]

For the foregoing reasons, Nevels has established that it would be inequitable for this case to proceed simultaneously with the bankruptcy matter. A temporary stay of this litigation is justified.

## III.    CONCLUSION

The Court will exercise its discretion to impose a discretionary temporary stay of Plaintiffs' action against Nevels until the resolution of TSG's bankruptcy proceedings, or until

---

[60] *See In re Adelphia Commc'ns Secs. Litig*, 2003 WL 22358819, at *6-8; *Morgenstern*, 2010 WL 678113, at *3-4; *In re Rite Aid Corp. Secs. Litig.*, No. 22-4201, 2024 WL 6964596, at *1 n.1 (E.D. Pa. June 4, 2024); *Zokaites Props., LP v. La Mesa Racing, LLC*, No. 11-259, 2011 WL 1900098, at *4-5 (W.D. Pa. May 19, 2011); *Bloom*, 2015 WL 140037, at *2-3; *Washington Mut. Bank v. L. Off. of Robert Jay Gumenick, P.C.*, 561 F. Supp. 2d 410, 412-13 (S.D.N.Y. 2008); *Shapiro*, 2021 WL 5304056, at *2.

[61] *Nken v. Holder*, 556 U.S. 418, 421, 434 (2009).

[62] *See Landis,* 299 U.S. at 254-55 (the court's exercise of its "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket" based upon the "economy of time and effort for itself, for counsel, and for litigants . . . [and] the exercise of judgment, which must weigh competing interests and maintain an even balance").

[63] *See* Pls.' Resp. at 26 [Doc. No. 73] (citing *Pavers & Road Builders Dist. Council Welfare Fund v. Core Contracting*, 536 B.R. 48 (E.D.N.Y. Aug. 18, 2015); *In re Residential Cap., LLC*, 529 F. App'x 69 (2d Cir. 2013)).

[64] *See Operational Prods. Supply & Servs., LLC v. Intel. Surveillance Corp.*, No. 21-9873, 2022 WL 16743860, at *2 (D.N.J. Apr. 14, 2022) ("Regardless of the automatic bankruptcy [stay], this Court has broad discretion to stay proceedings when warranted.").

such time that the Court finds it just to terminate the stay. Because the stay will be granted, the

Court will dismiss without prejudice Defendant's Motion to Dismiss the FAC and Plaintiffs'

Motion to File Second Amended Complaint. The parties may renew their motions when the stay

is lifted. A corresponding order will be entered.